UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AHMAD FARID KHORRAMI,

        Plaintiff,

    -vs-                                      Case No. 07-C-812

DALE MUELLER,

        Defendant.

---

## DECISION AND ORDER

---

In September of 2001, Dr. Ahmad Farid Khorrami, an alien on "advance parole," was employed by Skyway Airlines in Milwaukee, training to be an airline pilot. The FBI detained Dr. Khorrami soon after the 9/11 terrorist attacks. Khorrami alleges that on September 21, 2001, now-retired FBI Agent Dale Mueller violated his substantive due process rights by pushing him to the ground and kicking him multiple times during a custodial interrogation. August 12, 2013 Order Denying Mueller's Motion for Summary Judgment, ECF No. 151, at 1-2; 2013 WL 4087559, at *1. Khorrami's detention then continued for just under three months. After he was released, Khorrami suffered a heart attack which he claims was caused by post-traumatic stress disorder arising from Mueller's attack. *Id.* The parties filed several motions in limine in advance of the January 27 jury trial. These motions are addressed herein.

- **Mueller's motion to exclude references to actual or alleged prior bad acts** [ECF No. 172]

Mueller moves to exclude evidence that he physically intimidated Jeffrey Whitman, a murder/rape suspect, during an interrogation on August 4, 1988. Mueller also moves to exclude evidence that he assaulted Norbert Ellis, a murder/rape suspect, during an interrogation on December 18, 1997.

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Fed. R. Evid. 404(b)(1). However, prior bad acts can be admitted for other purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Accordingly, prior acts are admissible if the evidence is relevant to a matter at issue other than the propensity to commit the act complained of; if the prior act is similar enough and close enough in time to be relevant to the matter in issue; if the evidence is sufficient to support a jury finding that the defendant committed the similar act; and if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999).

Khorrami's prior acts evidence is probative of Mueller's intent, which is a relevant factor in the substantive due process analysis. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the

conscience-shocking level"). *See, e.g., Young v. Rabideau*, 821 F.2d 373, 379 (7th Cir. 1987) (a "record of loss of temper and consequential intentional hostility toward others on earlier occasions tended to show that a similar intent to do harm was present in his conduct toward this defendant"). Moreover, the prior acts are similar to the conduct alleged here. In both instances, Mueller was using intimidation in an effort to coerce a confession. With respect to Ellis, Mueller resorted to physical violence when Ellis was uncooperative with Mueller's investigation. Mueller testified at a suppression hearing that he "grabbed" Ellis, "shook him to, you know, make him tell the truth," "grabbed him by the neck with both hands," and Ellis' head "hit up against the wall and bounced off the wall." This is similar to what Mueller allegedly did to Khorrami: frustrated with his inability to extract a confession from Khorrami, Mueller pushed Khorrami to the ground and assaulted him.

The Whitman incident is perhaps less similar, but it is similar enough. *See United States v. Long*, 86 F.3d 81, 84 (7th Cir. 1996) ("Simple differences in the type of conduct or charge at issue cannot defeat the similarity requirement. . . . [The] analysis need not be unduly rigid. . . . The prior acts need not be duplicates of the one for which the defendant is now being tried"). Whitman accused Mueller of using his physical presence and anger to intimidate Whitman, and Whitman's statements were later excluded as involuntary. Thus, the inference is that Mueller intended to harm Whitman if Whitman didn't provide Mueller with the desired information. Similarly, Khorrami may have avoided an assault if he had confessed.

Both incidents are close enough in time to be relevant to the issue of Mueller's intent. The Ellis assault occurred only four years before Khorrami's interrogation, and the incidents are strikingly similar. *See, e.g., United States v. Hurn*, 496 F.3d 784, 788 (7th Cir. 2007) ("We have held that a district court does not abuse its discretion by admitting thirteen-year-old evidence of prior bad acts where the prior conduct is very similar to the conduct charged"). The Whitman incident is older and perhaps not as similar as the Ellis incident, but it is similar enough to compensate for the longer gap in time. *See United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005) ("temporal proximity of the prior acts to the current charge is not alone determinative of admissibility").

The third factor — whether the evidence is sufficient to support a jury finding that the defendant committed the similar act — is easily satisfied. Mueller admitted, under oath, that he assaulted Ellis, and Whitman's confession was suppressed on the basis of Mueller's conduct. *See, e.g., Petrovic v. City of Chi.*, No. 06 C 6111, 2008 WL 818309, at *3 (N.D. Ill. Mar. 21, 2008) (noting that a complaint against a police officer that was sustained by the police department's Office of Professional Standards is "sufficient to support a jury finding that [the police officer] committed the alleged act").

Finally, the danger of unfair prejudice, if any, can be alleviated by an appropriate limiting instruction. The parties should work towards an agreed upon instruction for the Court's consideration when it takes up the issue of jury instructions

- 4 -

during trial. Nor will the admission of this evidence result in the trial being needlessly sidetracked. Evidence of Mueller's prior acts can be introduced when Mueller takes the stand at trial. Accordingly, the probative value of Khorrami's Rule 404(b) evidence is not substantially outweighed by the danger of unfair prejudice or any of the other factors listed in Federal Rule of Evidence 403 (e.g., confusing the issues, misleading the jury, undue delay, wasting time).

Aside from incidents involving Whitman and Ellis, Mueller also moves to exclude evidence of general allegations of physical intimidation during interrogations. Khorrami didn't respond to this aspect of Mueller's motion. In a footnote, Khorrami mentions that Mueller has "been accused of numerous other acts of physical intimidation, both at the FBI and in his current private security job," but in the remainder of the footnote, Khorrami essentially concedes that he lacks evidence sufficient to support a jury finding that Mueller committed any similar acts other than the incidents already discussed. Therefore, Khorrami's 404(b) evidence must be limited to the specific incidents ruled admissible herein.

- **Mueller's motion to exclude references to alleged misconduct by others, purported misconduct by Mueller unrelated to "kicking," and other irrelevant matters** [ECF No. 174]

As the Court explained in its Order denying Mueller's motion for summary judgment, "[w]hat remains of this lawsuit is Dr. Khorrami's claim that . . . Mueller pushed him to the ground and kicked him multiple times during a custodial interrogation regarding the 9/11 attacks." 2013 WL 4087559, at *1. Accordingly,

- 5 -

Mueller argues that Khorrami cannot present evidence regarding events other than the alleged kicking, including, for instance, evidence regarding Khorrami's immigration status and subsequent three-month detention.

The Court will not catalogue all of the evidence that Mueller seeks to exclude because Mueller's motion is based on the erroneous premise that Khorrami's immigration status, interrogation, detention, and the circumstances which led to that detention are not relevant to Khorrami's claim. Khorrami wasn't detained for shoplifting, or even for murder. He was falsely accused of participating in the deadliest and most notorious terrorist attack in American history. Then, after Mueller allegedly attempted to beat a confession out of him, Khorrami was detained for almost three more months, forced to live in constant fear of another assault. Context matters. *See, e.g., Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) ("One measure of relevance is whether its exclusion would leave a chronological and conceptual void in the story") (quoting *United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012)).

Ultimately, the evidence at issue is relevant to the extent of Khorrami's injuries (e.g., the length of detention and the reason he was detained). It is also probative of Mueller's state of mind and intent (e.g., the lack of evidence linking Khorrami to the 9/11 attacks, Khorrami's immigration status). The probative value of this evidence is not outweighed by the danger of unfair prejudice. "It is not sufficient to find that the evidence is simply prejudicial because . . . all probative evidence is prejudicial to the party against whom it is offered. Rather, the relevant inquiry is whether there was

*unfair* prejudice . . ." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) (emphasis in original). The jury will be instructed only on the assault, and Mueller's counsel is free to explain that Khorrami's detention is relevant only as it pertains to damages.

- **Mueller's motion to exclude unidentified evidence of past medical expenses, future medical expenses, lost wages, lost future earnings, and diminished earning capacity** [ECF No. 176]

Litigants are required to initially disclose "a computation of each category of damages claimed by the disclosing party — who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. 26(a)(1)(A)(iii). These initial disclosures must be supplemented during the course of discovery. Fed. R. Civ. P. 26(e). A party who fails to follow these rules "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). *See also Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011).

Initially and during the course of discovery, Khorrami claimed entitlement to six types of damages: (1) past medical expenses, equal to the sum total of Khorrami's medical bills; (2) future medical expenses, equal to the medical bills Khorrami will continue to incur because of his near-fatal heart attack; (3) lost wages, equal to the wages Khorrami would have received as an airline pilot to date, had he not suffered

- 7 -

from a near-fatal heart attack that rendered him unemployable as an airline pilot; (4) lost future earnings, equal to additional earnings Khorrami would have continued to receive if he were employed as an airline pilot until the mandatory retirement age of 65; (5) physical and emotional pain and suffering; and (6) punitive damages. Mueller's motion is directed towards the first four categories. Mueller's motion also refers to diminished earnings capacity, but it appears to the Court that this concept is encompassed by Khorrami's claim for lost future earnings.

The Court agrees with Khorrami that he made the proper disclosures at the proper times during discovery, and any supposed error in the course of discovery was harmless in any event. Mueller's primary objection is to the lack of a formal and specific computation of damages, but the absence of an actual computation has been held harmless where the method of computation is straightforward and obvious. *See, e.g., Compak Co., LLC v. Johnson*, No. 03 C 7427, 2011 WL 1654269, at *17 (N.D. Ill. Apr. 28, 2011) (a detailed damages computation may not be necessary when the defendant is able to make the computation itself) (citing *Robinson v. Champaign Unit 4 Sch. Dist.*, 412 Fed. App'x 873, 878 (7th Cir. 2011)). For example, it may be an annoyance, but Mueller can use a calculator to add Khorrami's medical bills, all of which are in his possession. More than that, the Court does not perceive that any of Khorrami's categories are so complex that Mueller is prejudiced by Khorrami's disclosures, or lack thereof. *See, e.g., Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (damages computation is especially necessary when plaintiff seeks

complex damages such as lost profits). Obviously, there is some speculation and projection involved in computing future earnings and medical bills, but these are the proper subjects for cross-examination at trial.

- **Mueller's motion to exclude witnesses that Khorrami failed to timely disclose** [ECF No. 177]

Mueller moves to exclude testimony by Thomas Kneir and Terry Feiertag on the grounds that Khorrami failed to identify them as potential witnesses in his initial disclosures or supplementations thereto. However, the supplementation requirement does not apply to witnesses who were "otherwise made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). This exception applies to both of these witnesses.

Mr. Kneir is a former FBI agent who was the Agent in Charge of the FBI's Jacksonville, Florida office when Khorrami was interrogated by Mueller. Shortly after the interrogation, Kneir became the Agent in Charge of the FBI's Chicago office. In his initial complaint, Khorammi alleged that the INS submitted a letter from Mr. Kneir to the Immigration Court during Khorrami's prolonged detention which corrected a false statement made in a previous filing alleging that Khorrami was connected to one of the 9/11 hijackers. Khorrami was released two days after this letter was submitted. At Mueller's deposition in 2009, Khorrami's counsel questioned Mueller regarding Kneir and his letter to the Immigration Court. *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) ("Incidental discovery, particularly during a deposition,

- 9 -

of information ordinarily subject to supplementation satisfies the Rule 26(e)(1) duty as sufficiently as a formal filing"). Shortly thereafter, Mueller and Kneir were named as co-defendants in Khorrami's Second Amended Complaint in a related suit in the Northern District of Illinois.

Mr. Feiertag was Khorrami's immigration attorney during his immigration bond and removal proceedings. He is listed as Khorrami's counsel of record on the Decision of the Immigration Judge attached as Exhibit B to Mueller's motion to dismiss, filed in February of 2008. ECF No. 18-3.

Despite all of this information, Mueller argues that he wasn't on notice because neither individual can offer information that is relevant to Khorrami's claims. The Court has already rejected this argument by denying Mueller's motion to exclude "other irrelevant matters." ECF No. 174.

Even if the "otherwise made known" exception did not apply, the failure to disclose these witnesses, just like the purported failure to disclose a computation of damages, was harmless. Fed. R. Civ. P. 37(c)(1). Mueller has known about these witnesses for years, and the argument that their testimony would be irrelevant is of no avail.

- **Mueller's motion to exclude references to potential indemnification and references to Mueller's counsel or Mueller as "the government"** [ECF No. 178]; **Khorrami's motion to allow, if Mueller asserts an inability to pay defense, rebuttal that the Department of Justice will likely indemnify Mueller from any damages award** [ECF No. 187]

The parties agree that they will not describe Mueller or his counsel as "the

government," "the United States," "DOJ," "FBI," or similar terms. ECF No. 190.

Regarding indemnification, the Seventh Circuit has recognized the "inappropriateness of allowing the defendant to plead poverty if he will be indemnified," and that such evidence, if introduced, "opens the door" to the presentation of indemnification evidence. *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998). Mueller argues that he should be allowed to explain to the jury that this is a *Bivens* suit formally seeking relief against him in his personal capacity. However, the obvious implication of such an argument is that Mueller's personal assets are somehow in danger. Mueller cannot simultaneously hide indemnification from the jury while claiming that his own assets are at stake. Mueller argues that he would open the door only by arguing an inability to pay, but obviously, Mueller wants the jury to *think* that he will be unable to pay, or at least that personally satisfying the judgment would be a hardship. That is enough to open the door to indemnification evidence. Nor does it matter that Mueller does not have an absolute right to indemnification. If necessary, the likelihood of indemnification would become an issue of fact for the jury to resolve. If Mueller wants to appeal to the jury's sympathy in this manner, he will have to live with the consequences.

- **Mueller's motion to exclude Khorrami's statements to Dr. Vogelmann regarding his alleged assault and hematuria** [ECF No. 179]

Mueller argues that certain statements made by Khorrami to his primary care physician, Dr. Vogelman, are inadmissible hearsay. Khorrami intends to introduce Dr.

- 11 -

Case 2:07-cv-00812-RTR   Filed 01/06/14   Page 11 of 19   Document 217

Vogelmann's treatment notes and read her deposition testimony into the record. The notes indicate that Khorrami told Dr. Vogelmann that he was "kicked in [the] back" while in detention and that he experienced "hematuria," or blood in his urine, for "sev[eral] days but was "now okay." Similarly, Dr. Vogelmann testified at her deposition as follows: "He came in for a cough that he had since before December 14th. Um, he told me about the ear infection. Besides the cough, he was short of breath with his breathing. He told me he had been interrogated for 88 days, which was related to 9/11. He told me he was kicked in his back and he had blood in his urine for several days, but now he's okay."

Federal Rule of Evidence 803(4) exempts from the hearsay rule a statement that "is made for — and is reasonably pertinent to — medical diagnosis or treatment" and "describes medical history; past or present symptoms or sensations; their inception; or their general cause." The rationale behind this exception is that "a patient's self-interest in promoting the cure of his own medical ailments guarantees the reliability of statements the patient makes for purposes of diagnosis or treatment." *Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir. 1990). The test for admissibility is whether the statements "are of the type reasonably pertinent to a physician in providing treatment." *Cook v. Hoppin*, 783 F.2d 684, 690 (7th Cir. 1986); *see also United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985) (describing a two-part test for admissibility under Rule 803(4): "first, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and second, the content of the statements

must be such as is reasonably relied on by a physician in treatment or diagnosis").

Mueller argues that this exception is inapplicable because Khorrami's statements regarding his hematuria aren't related to the initial reason for his visit (cough and congestion), but a visit to a primary care physician can obviously cover a range of health topics. Khorrami had just been released from prison, so it isn't at all surprising that he sought treatment for something that happened to him months earlier during a long period of incarceration, even if the visit was prompted by an acute condition. Rule 803(4) plainly applies here.

- **Khorrami's motion to bar all reference to, or evidence of, Khorrami's prior arrests or alleged bad acts** [ECF No. 180]

The parties agree that neither party will make reference to or introduce any evidence of Khorrami's prior arrests or the acts that allegedly precipitated those arrests unless the other party opens the door to such testimony. The parties further agree to the redaction of any introduced exhibits to exclude reference to Khorrami's arrests and not to refer to the redacted information, unless the other party opens the door to such a reference. ECF No. 189.

- **Khorrami's motion to exclude reference to the ACLU** [ECF No. 181]

The parties agree that neither party will make reference to the ACLU at trial. ECF No. 190.

- **Khorrami's motion to exclude argument that he was not lawfully present in the United States** [ECF No. 182]

Mueller agrees that any argument that Khorrami was not lawfully present in

the United States when the events giving rise to this lawsuit occurred would be irrelevant and create a risk of unfair prejudice. In response, Mueller re-states his opposition to the introduction of *any* evidence regarding Khorrami's immigration status, but the Court has already ruled that such evidence is admissible to provide the necessary context to Khorrami's claims. Put simply, the Court agrees that the jury needs to know why Khorrami was in immigration detention when Mueller came to interrogate him.

- **Khorrami's motion to exclude Mueller's expert reports and *curriculum vitae* [ECF No. 183]**

The parties agree that neither party will introduce as evidence the report or *curriculum vitae* of an expert who testifies at trial, except for the purpose of impeachment. ECF No. 191.

- **Khorrami's motion to exclude evidence regarding his employment lawsuit** [ECF No. 184]

Khorrami moves to preclude Mueller from referring to or introducing evidence pertaining to his employment discrimination lawsuit against, and settlement with, Skyway Airlines. *Khorrami v. Skyway Airlines, Inc.*, Case No. 07-CV-503 (E.D. Wis.). Khorrami argues that this evidence should be excluded as irrelevant, and any actual relevance is outweighed by the danger of unfair prejudice or the possibility of misleading the jury under Federal Rule of Evidence 403. *See, e.g., Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 776 (7th Cir. 2001) (affirming a finding that the "probative value of evidence showing plaintiff's propensity to file possibly false

- 14 -

lawsuits . . . was outweighed by the danger of unfair prejudice inherent in a charge of litigiousness").

In response, Mueller argues that this evidence is relevant because it would allow the jury to weigh his alleged responsibility for Khorrami's damages against the culpability of Skyway. For example, Khorrami seeks $429,000.00 in lost wages on the basis that the alleged kicking interrupted his training and led to his alleged inability to find employment in the airline industry. In the Skyway litigation, Khorrami blamed his inability to work from late 2002 through 2005 and the ultimate loss of his job to misconduct and discrimination by Skyway.

As an initial matter, the Court agrees that the settlement should be excluded. Khorrami and Skyway could have settled for a variety of reasons wholly unrelated to Skyway's culpability. *United States v. Roti*, 484 F.3d 934, 936 (7th Cir. 2007) (noting that a settlement was irrelevant because it could have been reached "to avoid the cost and distraction of defending the suit"). More than that, evidence regarding the Skyway lawsuit is simply not relevant. The fact that Skyway's discriminatory conduct may have caused pain, suffering or lost wages does not undermine or conflict with Khorrami's claim that Mueller's assault caused the same or similar type of harm. Whatever relevance this evidence may have is far outweighed by the danger of unfair prejudice and juror confusion.

- **Khorrami's motion to exclude argument and evidence regarding collateral source payments for injuries caused by Mueller** [ECF No. 185]

Pursuant to the collateral source rule, Khorrami moves for an order barring Mueller from introducing evidence of health insurance payments made due to Khorrami's medical costs resulting from Mueller's assault, arguing that Khorrami's compensatory damages from medical costs are reduced by health insurance payments, and introducing evidence of or arguing that Khorrami's compensatory damages from loss of employment opportunity are reduced by unemployment benefit payments. Under the collateral source rule, "the defendant's liability shall not be reduced merely because Plaintiff's net damages are reduced by payments received from others." *Gill v. Maciejewski*, 546 F.3d 557, 564 (8th Cir. 2008). The collateral source rule applies in Section 1983 cases, *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986), so it should also apply to this *Bivens* action. *Arnett v. Webster*, 658 F.3d 742, 750 n.4 (7th Cir. 2011) ("*Bivens* authorizes the filing of constitutional tort suits against federal officers in much the same way that [Section 1983] authorizes such suits against state officers").

With respect to medical expenses, Mueller argues that insofar as Khorrami bases his claim of emotional distress on stresses attributable to medical expenses, it is only fair to allow cross examination on his out of pocket costs. Khorrami does not assert that medical expenses are the source of his emotional pain and suffering, so it is unlikely that Khorrami would "open the door" for cross-examination in this manner.

With respect to unemployment benefits, Mueller argues that Khorrami's certification that he was "able to work" undermines Khorrami's claim that his ability to make a living was impacted by the assault. Again, this is a spurious argument

- 16 -

because Khorrami was physically capable of working and flying a plane, but no airline would hire him because he had a heart attack. Thus, Khorrami's certification for unemployment benefits in no way undermines his credibility.

- **Khorrami's motion to exclude argument or evidence that a judgment against Mueller would burden taxpayers or the public** [ECF No. 186]

This evidence will be excluded because it is irrelevant and because of the danger of unfair prejudice. *See, e.g., Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 429 (7th Cir. 2008) ("Closing remarks that appeal to jurors' pecuniary interests as taxpayers are, of course, generally improper"); *United States v. Scott*, 660 F.2d 1145, 1170 (7th Cir. 1981) ("Since pecuniary interests would necessarily disqualify a prospective juror from service, it is patently improper to make an appeal to that interest in closing argument").

- **Khorrami's motion to exclude references to the fact that his counsel is not from Milwaukee** [ECF No. 188]

The parties agree that neither party will make reference to the fact that counsel for the other party is from out-of-town. ECF No. 192.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Mueller's Motion to exclude references to actual or alleged prior bad acts [ECF No. 172] is **GRANTED-IN-PART** and **DENIED-IN-PART**;

2. Mueller's motion to exclude references to alleged misconduct by others, purported misconduct unrelated to "kicking," and other irrelevant matters [ECF No.

174] is **DENIED**;

3. Mueller's motion to exclude unidentified evidence of past medical expenses, future medical expenses, lost wages, lost future earnings, and diminished earning capacity [ECF No. 176] is **DENIED**;

4. Mueller's motion to exclude witnesses that plaintiff failed to timely disclose [ECF No. 177] is **DENIED**;

5. Mueller's motion to exclude references to potential indemnification and references to defense counsel or defendant as "the government" [ECF No. 178] is **GRANTED-IN-PART** and **DENIED-IN-PART**;

6. Mueller's motion to exclude plaintiff's statements to Dr. Vogelmann regarding his alleged assault and hematuria [ECF No. 179] is **DENIED**;

7. Khorrami's motion to bar all reference to, or evidence of, Khorrami's prior arrests or alleged bad acts [ECF No. 180] is **GRANTED**;

8. Khorrami's motion to exclude reference to the ACLU [ECF No. 181] is **GRANTED**;

9. Khorrami's motion to exclude argument that he was not lawfully present in the United States [ECF No. 182] is **GRANTED**;

10. Khorrami's motion to exclude Mueller's expert reports and *curriculum vitae* [ECF No. 183] is **GRANTED**;

11. Khorrami's motion to exclude evidence regarding his employment lawsuit [ECF No. 184] is **GRANTED**;

12. Khorrami's motion to exclude argument and evidence regarding collateral source payments for injuries caused by Mueller [ECF No. 185] is **GRANTED**;

13. Khorrami's motion to exclude argument or evidence that a judgment against Mueller would burden taxpayers or the public [ECF No. 186] is **GRANTED**;

14. Khorrami's motion to allow, if defendant asserts an inability to pay defense, rebuttal that the Department of Justice will likely indemnify defendant from any damages award [ECF No. 187] is **GRANTED**;

15. Khorrami's motion to exclude references to the fact that his counsel is not from Milwaukee [ECF No. 188] is **GRANTED**;

16. Mueller's motion for leave to file documents under seal [ECF No. 175] is **GRANTED**; and

17. Khorrami's motion for leave to file documents under seal [ECF No. 204] is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 6th day of January, 2014.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**